J-S59021-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| CHARLES WATSON | |
| Appellant | No. 185 EDA 2015 |

Appeal from the Judgment of Sentence June 30, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0006119-2013

BEFORE: BENDER, P.J.E., OLSON and FITZGERALD,* JJ.

MEMORANDUM BY OLSON, J.: **Filed January 20, 2017**

Appellant, Charles Watson, appeals from the judgment of sentence entered on June 30, 2014, following his jury trial convictions for first-degree murder, carrying a firearm without a license, and possessing an instrument of crime.[1] Upon careful consideration, we affirm.

The trial court briefly summarized the facts of this case as follows:

> On May 2, 2010, [Appellant] shot and killed Linwood Bowser ("Bowser") while Bowser was standing with a group of people, including Charna Aruviereh ("Aruviereh"), near the corner of 28th Street and Jefferson Street in North Philadelphia. Immediately after [the shooting], Bowser ran with Aruviereh inside 2735 Jefferson Street, whereupon Bowser collapsed on the floor inside. Police officers quickly arrived on scene. One of the witnesses on scene, Edward Nelson, told police that two people who had witnessed the

---

[1] 18 Pa.C.S.A. §§ 2502(a), 6106, and 907, respectively.

*Former Justice specially assigned to the Superior Court.

shooting had run away. The two males were apprehended and identified as Jamil Jackson ("Jackson") and James Holley ("Holley"). Immediately after the shooting, [Appellant] was not positively identified as the shooter; however, in the days and weeks following the shooting, the detectives' investigation led them to [Appellant]. In the months following the homicide, Detective [John] Verrecchio led his team in conducting a lengthy investigation in which he and the other detectives interviewed witnesses to the events and details surrounding the shooting, including Aruviereh, Jackson, Holley, Kevin Cropper ("Cropper"), Demetrius McClennan ("McClennan"), and Estelita Maria Robinson ("Robinson") and several witnesses[] made a positive identification of [Appellant].

Trial Court Opinion, 8/25/2015, at 3-4.

Procedurally, the case progressed as follows:

On June 30, 2014, the jury found [Appellant] guilty of [the aforementioned crimes. The trial court] sentenced [Appellant] to the mandatory term of life imprisonment without parole on the murder charge. [Appellant] received no further penalty on the remaining charges. On July 2, 2014, [Appellant] file post sentence motions, which were denied on October 30, 2014.

On October 30, 2014, [the trial] court received a [n]otice of [a]ppeal and on May 12, 2015, upon completion of the notes of testimony, [Appellant] was served an [o]rder directing him to file a concise statement of the appeal issues pursuant to Pa.R.A.P. 1925(b). On June 1, 2015, [the trial] court received [Appellant's] 1925(b) [statement. The trial court filed an opinion pursuant to Pa.R.A.P. 1925(a) on August 25, 2015.]

*Id.* at 1-2.

On appeal, Appellant presents the following issues for our review:

I. Where the Commonwealth failed to file a reciprocal alibi notice, did the trial court abuse its discretion by permitting the Commonwealth to present the testimony of Detective Verrecchio and Brad Mitchell

- 2 -

King in rebuttal to Appellant's alibi witnesses, to question said witnesses in such a manner as to circumvent the restrictions placed on such testimony by the court, and to suggest to the jury that it should speculate on the content of the evidence excluded by the court?

II.    Should a new trial be granted because of misconduct during the prosecutor's closing to the jury, which so affected the proceedings as to have deprived Appellant of his right to a fair trial and due process?

III.   Did the trial court commit prejudicial error in overruling defense objection[s] to repeated testimony by Detective Verrecchio to the effect he had knowledge after unspecified investigation that other suspects were not guilty?

IV.    Did the court abuse its discretion in permitting the prolonged display, over repeated defense objection, of slides of the prior statements of the Commonwealth's three identification witnesses, thus unduly highlighting the former statements as opposed to the witnesses' testimony in court?

V.     Did the trial court err by refusing Appellant's requested jury instruction with respect to the Commonwealth's failure to investigate his notice of alibi?

VI.    Did the trial court err by refusing Appellant's requested jury instruction with respect to identification?

VII.   Was the evidence so conflicting and unreliable as to have been insufficient to support Appellant's conviction as a matter of constitutional law?

VIII.  Was the verdict against the weight of the evidence, given the solid and consistent alibi evidence as compared with conflicting and unreliable evidence concerning identification?

Appellant's Brief at 3-4.

In his first issue presented, Appellant claims the trial court erred by permitting the Commonwealth "to introduce rebuttal alibi testimony through Detective Verrecchio and witness Brad Michael King [(King)]" because "the Commonwealth defaulted on its reciprocal disclosure requirements under Pa.R.Crim.P. 567[.]" *Id.* at 17. On November 6, 2013, Appellant filed a notice of alibi defense pursuant to Pa.R.Crim.P. 567(A) and listed King as a potential alibi witness for the defense. *Id.* at 24. At trial, Appellant called six alibi witnesses, who claimed he was at a party watching a boxing match across town at the time of the murder; the defense, however, did not call King. *Id.* at 13, 24. When the Commonwealth then sought to call King, Appellant asserted the Commonwealth did not reciprocate disclosure of the witnesses it intended to call to disprove or discredit his alibi claims as required under Pa.R.Crim.P. 567(C). *Id.* at 24. Thus, Appellant maintains the Commonwealth was precluded from calling King to rebut Appellant's alibi. *Id.* Appellant further claims it was trial court error to allow Detective Verrecchio to testify and confirm that he interviewed King after someone identified him at the murder scene. *Id.* Furthermore, Appellant maintains, "the reciprocal disclosure responsibilities placed on the Commonwealth are not mere local procedural requirements, but reflect the United States Supreme Court's judgment in **Wardius v. Oregon**, 412 U.S. 470 (1973) that such a reciprocal requirement is required as a matter of constitutional due process." *Id.* at 30.

In sum, Appellant argues:

> [T]he court did fashion an intermediate sanction which (1) forbade Detective Verrecchio from testifying in rebuttal to the alibi, and (2) permitted limited evidence from [] King, with strong admonitions to the prosecutor not to imply to the jury, while attempting impeachment, that statements were being hidden from their view. Yet when the chips were down and the examinations were in progress, the court, by its rulings, permitted exactly what it purported to forbid. Detective Verrecchio was examined in such a way that it was plain to anyone that King had allegedly given him information about Appellant's alibi. And King, in turn, was examined in such a way that it was plain that the content of that alleged information was that Appellant was not with King at the fight party. The fact that questions were couched in terms of "did you ever tell anyone" was completely ineffective given the surrounding questions focusing upon other matters that King told to Detective Verrecchio specifically. Finally, of course, any shreds remaining of the trial court's tattered initial rulings were definitively removed by its failure to intervene following defense counsel's objection to the prosecutor, during her closing, baldly and openly inviting the jury to speculate on what King must have told the detective.

*Id.* at 31-32 (citation omitted).

The standard of review for challenges to the admissibility of evidence is well-settled:

> The admission of evidence is solely within the discretion of the trial court, and a trial court's evidentiary rulings will be reversed on appeal only upon an abuse of that discretion. An abuse of discretion will not be found based on a mere error of judgment, but rather occurs where the court has reached a conclusion that overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will.

*Commonwealth v. Witmayer*, 144 A.3d 939, 949 (Pa. Super. 2016).

"Generally, an alibi is a defense that places the defendant at the relevant time in a different place than the scene involved and so removed therefrom as to render it impossible for him to be the guilty party." *Commonwealth v. Ali*, 10 A.3d 282, 316 (Pa. 2010) (internal citation omitted). "At the core of an alibi defense is, of course, consistency between the date and time of the crime and that of the defendant's alibi." *Id.* Pennsylvania Rule of Criminal Procedure 567[2] provides, in pertinent part:

> **(A)** **Notice by Defendant.** A defendant who intends to offer the defense of alibi at trial shall file with the clerk of courts not later than the time required for filing the omnibus pretrial motion provided in Rule 579 a notice specifying an intention to offer an alibi defense, and shall serve a copy of the notice and a certificate of service on the attorney for the Commonwealth.
>
> > (1)   The notice and a certificate of service shall be signed by the attorney for the defendant, or the defendant if unrepresented.
> >
> > (2)   The notice shall contain specific information as to the place or places where the defendant claims to have been at the time of the alleged offense and the names and addresses of the witnesses whom the defendant intends to call in support of the claim.
>
> **(B)**   **Failure to File Notice.**
>
> > (1)   If the defendant fails to file and serve the notice of alibi as required by this rule, the court may

---

[2]   Adopted January 27, 2006, effective August 1, 2006, Pa.R.Crim.P. 567 replaced and amended prior Rules of Criminal Procedure 305 and 573.

- 6 -

exclude entirely any evidence offered by the defendant for the purpose of proving the defense, except testimony by the defendant, may grant a continuance to enable the Commonwealth to investigate such evidence, or may make such other order as the interests of justice require.

(2) If the defendant omits any witness from the notice of alibi, the court at trial may exclude the testimony of the omitted witness, may grant a continuance to enable the Commonwealth to investigate the witness, or may make such other order as the interests of justice require.

**(C) Reciprocal Notice of Witnesses.** Within 10 days after receipt of the defendant's notice of defense of alibi, or within such other time as allowed by the court upon cause shown, the attorney for the Commonwealth shall file and serve upon defendant's attorney, or the defendant if unrepresented, written notice of the names and addresses of all witnesses the attorney for the Commonwealth intends to call to disprove or discredit the defendant's claim of alibi.

**(D) Failure to File Reciprocal Notice.**

(1) If the attorney for the Commonwealth fails to file and serve a list of its witnesses required by this rule, the court may exclude any evidence offered by the Commonwealth for the purpose of disproving the alibi defense, may grant a continuance to enable the defense to investigate such evidence, or may make such other order as the interests of justice require.

(2) If the attorney for the Commonwealth omits a witness from the list of its witnesses required by paragraph (C), the court at trial may exclude the testimony of the omitted witness, may grant a continuance to enable the defense to investigate the witness, or may make such other order as the interests of justice require.

Pa.R.Crim.P. 567.

The United States Supreme Court has provided guidance regarding alibi reciprocity in **Wardius v. Oregon**, 412 U.S. 470 (1973), a case cited by Appellant and referenced specifically in Rule 567. The **Wardius** Court determined:

> Notice-of-alibi rules, now in use in a large and growing number of States, are based on the proposition that the ends of justice will best be served by a system of liberal discovery which gives both parties the maximum possible amount of information with which to prepare their cases and thereby reduces the possibility of surprise at trial. The growth of such discovery devices is a salutary development which, by increasing the evidence available to both parties, enhances the fairness of the adversary system. As we [have] recognized [], nothing in the Due Process Clause precludes States from experimenting with systems of broad discovery designed to achieve these goals. The adversary system of trial is hardly an end in itself; it is not yet a poker game in which players enjoy an absolute right always to conceal their cards until played. We find ample room in that system, at least as far as due process is concerned, for (a rule) which is designed to enhance the search for truth in the criminal trial by insuring both the defendant and the State ample opportunity to investigate certain facts crucial to the determination of guilt or innocence.
>
> Although the Due Process Clause has little to say regarding the amount of discovery which the parties must be afforded, it does speak to the balance of forces between the accused and his accuser.
>
> \* \* \*
>
> [W]e do hold that in the absence of a strong showing of state interests to the contrary, discovery must be a two-way street. The State may not insist that trials be run as a search for truth so far as defense witnesses are concerned, while maintaining poker game secrecy for its own witnesses. It is fundamentally unfair to require a defendant to divulge the details of his own case while at the same time

- 8 -

subjecting him to the hazard of surprise concerning refutation of the very pieces of evidence which he disclosed to the State.

*Wardius*, 412 U.S. at 473–476 (internal citations, quotations, and footnotes omitted).

Bearing in mind the salient principle stressed in Wardius, that alibi discovery must be a two-way street, this Court previously determined that courts should not read the reciprocal alibi notice rule in overly technical terms. For example, in ***Commonwealth v. Nieves***, 582 A.2d 341 (Pa. Super. 1990),

> [t]he trial court found that [Nieves] was well aware of the evidence to be presented to rebut his alibi claim, and that the technical error of the Commonwealth in not submitting a list with the complainant's name and the name of the police officer to whom prior inconsistent statements had been made by [Nieves] was harmless. [Nieves] was aware that the victim would contradict his alibi claim, and he was provided with copies of the police reports which recorded his prior inconsistent statements during informal discovery. […] The trial court found the **purpose** of the [reciprocal notice of alibi rule] to have been fulfilled despite a technical violation of its letter, and concluded that no relief was appropriate. [This Court] agree[d].

*Nieves*, 582 A.2d at 349 (emphasis in original).

In this case, the trial court concluded:

> King had been present at the trial, under subpoena [by Appellant], and had been interviewed by both the Commonwealth and defense. Under these circumstances, [the trial court] allowed the Commonwealth to call King, with limitations on the Commonwealth's inquiry. [The trial court] did not allow the Commonwealth to again call Detective Verrecchio to present King's statement as substantive evidence.

- 9 -

* * *

> During the rebuttal examinations of both Detective Verrecchio and King, [the trial] court limited the scope of the Commonwealth's direct examination to exclude any extrinsic evidence of the conversation between Detective Verrecchio and King regarding [Appellant's] alibi. Moreover, [the trial] court excluded impeachment testimony of Detective Verrecchio regarding King's statements. Further, [the trial] court permitted defense counsel to interview King prior to rebuttal testimony on two occasions, one of which was declined. No information that the Commonwealth should have provided [Appellant] in reciprocal prevented [Appellant] from mounting his alibi defense. As such, [the trial] court [determined it] acted according to the letter and spirit of Rule 567 regarding the Commonwealth's failure to disclose.

Trial Court Opinion, 8/25/2015, at 6-7 (record citations omitted).

Upon review, we discern no abuse of discretion or error of law. Appellant listed King as a defense alibi witness prior to trial. N.T., 6/25/2014, at 71; N.T., 6/26/2014, at 17. Early in the murder investigation, police received photographs of King and Appellant and, when asked about the photographs, King made oral statements to police about the incident in question. N.T., 6/25/2014, at 44-47. Appellant does not dispute that he was aware of King's alleged statements to police prior to trial. Moreover, the trial court permitted defense counsel two opportunities to interview King regarding the substance of his testimony prior to taking the stand. N.T., 6/26/2014, at 17-24, 29-30.

Based upon all of the foregoing, we discern no abuse of discretion or error of law. Rule 567 was designed to enhance the search for truth by

- 10 -

insuring both Appellant and the Commonwealth ample opportunities to investigate certain facts crucial to the determination of guilt or innocence. *Wardius*, 412 U.S. at 474. To accomplish this task, Rule 567 affords discretion to the trial court in confronting the various situations presented at trial. For example, Rule 567 repeatedly authorizes the trial court to impose sanctions for recalcitrant behavior, but does not compel any particular course of action in such instances. *See* Pa.R.Crim.P. 567(B)(1) and (2). Appellant was well aware of the evidence the Commonwealth sought to present because he listed King himself. *Nieves*, 582 A.2d at 349. The Commonwealth's technical error in not submitting King's name on a reciprocal alibi notice list was harmless, because the purpose of Rule 567 was fulfilled. *Id.* As such, Appellant is not entitled to relief on his first claims.

Next, Appellant argues he is entitled to a new trial because the Commonwealth engaged in prosecutorial misconduct during closing argument. Appellant's Brief at 33-38. More specifically, Appellant contends that the Commonwealth's closing argument: (1) suggested Detective Verrecchio was testifying as a rebuttal witness despite the trial court's prior limitations on his testimony; (2) personally vouched for Detective Verrecchio's truthfulness and called upon the authority of the court to vouch for the unreliability of recanting witnesses; and (3) "invited speculation as to

the contents of statements by [] King which had been specifically excluded from evidence." ***Id.*** at 34.

This Court previously determined:

It is well[-]settled that a prosecutor has considerable latitude during closing arguments and his arguments are fair if they are supported by the evidence or use inferences that can reasonably be derived from the evidence. Further, prosecutorial misconduct does not take place unless the unavoidable effect of the comments at issue was to prejudice the jurors by forming in their minds a fixed bias and hostility toward the defendant, thus impeding their ability to weigh the evidence objectively and render a true verdict.

In determining whether the prosecutor engaged in misconduct, we must keep in mind that comments made by a prosecutor must be examined within the context of defense counsel's conduct. It is well[-]settled that the prosecutor may fairly respond to points made in the defense closing. Moreover, prosecutorial misconduct will not be found where comments were based on the evidence or proper inferences therefrom or were only oratorical flair.

\*        \*        \*

It is settled that it is improper for a prosecutor to express a personal belief as to the credibility of the defendant or other witnesses. However, the prosecutor may comment on the credibility of witnesses. Further, a prosecutor is allowed to respond to defense arguments with logical force and vigor. If defense counsel has attacked the credibility of witnesses in closing, the prosecutor may present argument addressing the witnesses' credibility.

***Commonwealth v. Judy***, 978 A.2d 1015, 1020 (Pa. Super. 2009) (internal citations and quotations omitted).

"[T]he trial court is vested with discretion to grant a mistrial whenever the alleged prejudicial event may reasonably be said to deprive the

- 12 -

defendant of a fair and impartial trial." *Id.* at 1019. The trial "court must discern whether misconduct or prejudicial error actually occurred, and if so, ... assess the degree of any resulting prejudice." *Id.* "Our review [] is [then] constrained to determining whether the court abused its discretion." *Id.*

Here, the trial court determined:

> The remarks were made in fair response to the defense set forth by [Appellant] in his cross-examination of identification witnesses and direct examination of alibi witnesses. The prosecutor discussed the development of the investigation taken by Detective Verrecchio, which led to identifying [Appellant] as the shooter. Moreover, defense counsel opened the door to the Commonwealth's remarks by describing the examination of [] King as "some last ditch effort somehow reaching the bottom of the barrel." As such, the prosecutor's remarks were proper argument which did not constitute reversible error. Further, [the trial] court found that the remarks were not a deliberate attempt to destroy the jury's objectivity, but rather a synopsis of Detective Verrecchio's testimony. As such, the Commonwealth's argument was proper[.]

Trial Court Opinion, 8/25/2015, at 11-12 (record citation omitted).

Upon review, we agree. The credibility of identification testimony and the thoroughness of the ongoing police investigation were fundamental to the instant case and both parties argued that they were searching for the truth. Here, the Commonwealth's isolated closing comments were fair response to Appellant's suggestion that certain witnesses, who initially identified Appellant as the shooter to police, later recanted. Appellant also suggested during closing that calling King was a last ditch effort in the

Commonwealth's investigation and the Commonwealth was permitted latitude to respond. The Commonwealth's passing references to the search for truth was not deliberately made to destroy the jury's objectivity. Hence, we discern no abuse of discretion or trial court error.

Next, Appellant contends that Detective Verrecchio "was permitted, over defense objection, to testify obliquely to the contents of other witnesses' statements and to the fact that other suspects had supposedly been cleared of involvement." Appellant's Brief at 39. More specifically, Appellant claims it was trial court error to allow Detective Verrecchio to testify that the police investigated two suspects, Jamil Jackson and Shawn Hamilton, and concluded that they were not involved in the instant crime. *Id.* at 39-42. Appellant claims the testimony "went far beyond what was necessary to explain the course of investigation by police, and indeed, was clearly offered for the truth of [Detective Verrecchio's] conclusion that certain suspects were in fact innocent." *Id.* at 42-43.

"[I]t is well established that certain out-of-court statements offered to explain the course of police conduct are admissible because they are offered not for the truth of the matters asserted but rather to show the information upon which police acted." *Commonwealth v. Chmiel*, 889 A.2d 501, 532 (Pa. 2005), *citing Commonwealth v. Jones*, 658 A.2d 746, 751 (Pa. 1995). "The trial court, in exercising discretion over the admission of such statements, must balance the prosecution's need for the statements against

any prejudice arising therefrom." *Id.* at 533. When a defendant challenges the competency of a police investigation, it opens the door for the prosecution to provide extensive testimony explaining the course of the investigation. *Id.* Moreover, our Supreme Court has found police investigation testimony proper when it merely repeats matters covered by another testifying witness. *Id.*

In this case, there is no question that Appellant, at trial, attacked the adequacy of the lengthy police investigation. The trial court found that police testimony regarding the course of the investigation "was necessary to explain why [Appellant] was not immediately identified as the shooter and why his arrest did not come until October 2012[,]" over two years after the murder. Trial Court Opinion, 8/25/2015, at 18-19. We agree. Initially we note that Jamil Jackson testified in his own right at trial; therefore, we discern no abuse of discretion, or prejudice to Appellant, in allowing police to testify regarding their interview with Jackson. With regard to Detective Verrecchio's interview of Shawn Hamilton, upon review of the trial transcripts, the Commonwealth specifically tailored its line of questioning to avoid the actual content of Hamilton's statement. N.T., 6/24/2014, at 149-150. It was only upon defense counsel's cross-examination that Detective Verrecchio revealed the substance of the Hamilton interview. Hamilton, imprisoned on other murder charges, told police that he shot the victim in this case, but he could not provide specifics or details about the murder and

"then admitted he was fabricating the story […] to help out a friend." *Id.* at 226. Because Appellant, not the Commonwealth, elicited the now-challenged testimony explaining the course of the police investigation, we discern no trial court error or abuse of discretion.

In his fourth issue presented, Appellant argues the trial court abused its discretion in permitting the prolonged display of prior statements to police made by three identification witnesses, Cropper, Aruviereh, and Jackson. Appellant's Brief at 43. Appellant posits it was an abuse of discretion to permit "the Commonwealth to display the projected images of these out of court statements at length during the Commonwealth's examination of these witnesses as on cross[-examination] and again, redundantly, during the examinations of [the investigating detectives] who were called upon to testify to the taking of the statements." *Id.* at 44. Appellant claims, "[t]he prominent and prolonged visual display of the prior statements unduly emphasized [them] in contrast to the in-court testimony of the witnesses, intruded on the fact-finding function of the jury, and deprived [Appellant] of his right to a fair trial under the due process clause." *Id.*

As previously stated, "the admission of evidence is solely within the discretion of the trial court, and a trial court's evidentiary rulings will be reversed on appeal only upon an abuse of that discretion." *Witmayer*, 144 A.3d at 949. Our Supreme Court has determined:

There are three basic types of evidence that are admitted into court: (1) testimonial evidence; (2) documentary evidence; and (3) demonstrative evidence. Presently, at issue is demonstrative evidence, which is tendered for the purpose of rendering other evidence more comprehensible to the trier of fact. As in the admission of any other evidence, a trial court may admit demonstrative evidence whose relevance outweighs any potential prejudicial effect. The offering party must authenticate such evidence. The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims. Demonstrative evidence may be authenticated by testimony from a witness who has knowledge that a matter is what it is claimed to be. Demonstrative evidence such as photographs, motion pictures, diagrams, and models have long been permitted to be entered into evidence provided that the demonstrative evidence fairly and accurately represents that which it purports to depict.

The overriding principle in determining if any evidence, including demonstrative, should be admitted involves a weighing of the probative value versus prejudicial effect. We have held that the trial court must decide first if the evidence is relevant and, if so, whether its probative value outweighs its prejudicial effect. This Commonwealth defines relevant evidence as having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Relevant evidence may nevertheless be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

*Commonwealth v. Serge*, 896 A.2d 1170, 1177 (Pa. 2006) (internal citations and quotations omitted).

Here, the trial court concluded:

> Witnesses Aruviereh, Jackson and Cropper were permitted to reference their prior statements to police during the course of their testimony. The witnesses subsequently explained in whole and denied in part these statements, after which defense counsel was permitted to question each witness. The display of the witnesses' prior inconsistent statements served as a piece of demonstrative evidence to aid the fact finder in determining the truthfulness and veracity of the witnesses' testimony. [The trial] court determined that the probative value of the displaying the prior inconsistent statements was not outweighed by any unfair prejudice to [Appellant], as the documents on display were exact replicas of the witnesses' statements. Further, all three witnesses were able to authenticate the prior statements as original copies. Thus, the witnesses' prior inconsistent statements were properly presented at trial.

Trial Court Opinion, 8/25/2015, at 16.

Appellant admits that he "does not challenge the admissibility of these statements, but rather the emphasis with which they were displayed." Appellant's Brief at 44. Thus, Appellant only claims that the unfair prejudice of visually displaying the statements outweighed the probative value of those statements. We disagree. Both parties used the projected statements in questioning the witnesses. Appellant was able to highlight the inconsistencies in the witnesses' written statements, just the same as the Commonwealth. Accordingly, we conclude that there was no prejudice to Appellant. As such, Appellant's fourth issue lacks merit.

Appellant's fifth and sixth issues assert the trial court erred by refusing Appellant's requested jury instructions. "[O]ur standard of review when considering the denial of jury instructions is one of deference—an appellate court will reverse a court's decision only when it abused its discretion or

- 18 -

committed an error of law." ***Commonwealth v. Galvin***, 985 A.2d 783, 798–799 (Pa. 2009).  When reviewing a challenge to instructions given to the jury,

> the reviewing court must consider the charge as a whole to determine if the charge was inadequate, erroneous, or prejudicial. The trial court has broad discretion in phrasing its instructions, and may choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration. A new trial is required on account of an erroneous jury instruction only if the instruction under review contained fundamental error, misled, or confused the jury.

***Commonwealth v. Fletcher***, 986 A.2d 759, 792 (Pa. 2009) (internal citations and quotations omitted).

In his fifth issue presented, Appellant contends that despite filing his notice of alibi defense seven months before trial, "the Commonwealth failed to investigate the alibi witnesses named, six of whom testified at trial for [Appellant]."  Appellant's Brief at 46.  As such, Appellant requested an instruction that the jury could consider the foregoing in determining whether the Commonwealth proved their case beyond a reasonable doubt.  ***Id.*** at 47.

In this case, the trial court concluded it "provided standard instructions regarding [Appellant's] alibi defense that clearly and accurately presented the legal concepts to the jury, including reasonable doubt."  Trial Court Opinion, 8/25/2015, at 21.  The trial court further stated that "[t]he Commonwealth's investigation, or lack thereof, with regard to [] alibi, was for the argument of counsel and not for a charge from the court."  ***Id.***  Upon

- 19 -

review, we agree with the trial court's analysis. Appellant requested that the trial court instruct the jury that the Commonwealth's failure to investigate Appellant's alibi witnesses could be considered by the jury in determining reasonable doubt. Instead, the trial court included standard jury instructions regarding alibi witnesses and reasonable doubt. N.T., 6/26/2014, at 150-152, 171-172. The trial court clearly, adequately, and accurately presented the law regarding alibis to the jury. We discern no error.

In his sixth issue presented, Appellant, citing our Supreme Court's 2014 decision in **Commonwealth v. Walker**, 92 A.3d 766 (Pa. 2014), argues the trial court failed to modify the standard jury instruction regarding identification as set forth in **Commonwealth v. Kloiber**, 106 A.2d 820 (Pa. 1954), "to take into account the potential effects of weapons focus, stress or the suggestiveness inherent in being presented with a photo array without first being cautioned the perpetrator may or may not be included in the display." Appellant's Brief at 50-51. Thus, Appellant maintains the trial court erred when it refused to charge the jury with his written, proposed instruction on identification "taken from Connecticut and New Jersey practice, as the analysis of these jurisdictions' case law figured prominently in the **Walker** opinion." **Id.** at 51. Accordingly, Appellant posits that "[s]ince identification was the core issue in the case, [the trial court's refusal to issue Appellant's suggested charge,] was [] highly prejudicial and should warrant a new trial." **Id.** at 53.

"A defendant is entitled to a *Kloiber* instruction where a witness: (1) was not in a position to clearly observe the defendant, or is not positive as to identity; (2) equivocated on the identification; or (3) failed to identify the defendant on prior occasions." *Commonwealth v. Johnson*, 139 A.3d 1257, 1281 (Pa. 2016) (internal citation omitted). In *Walker*, our Supreme Court granted allocatur to determine "whether a trial court may, in its discretion, permit expert testimony in the area of eyewitness identification, and [to] reconsider [Pennsylvania's] current decisional law which absolutely bans such expert testimony." *Walker*, 92 A.3d 766, 769 (Pa. 2014). The majority in *Walker*, "reject[ed] reliance upon cross-examination and closing arguments as sufficient to convey to the jury the possible factors impacting eyewitness identification and as justification for an absolute bar of such expert testimony, and recognize[d] the potential advantages of expert testimony as a means to assist the jury where mistaken identity is a possibility." *Id.* at 786. The *Walker* majority further stated "a *Kloiber* instruction would not serve as a sufficient reason to deny categorically the use of expert testimony" because "factors such as cross-racial identification, weapons focus, stress, or correlation between confidence and accuracy of identification are divorced from the compromised position of the witness, his or her lack of positive identification, or any expressed qualification of statements regarding identification." The *Walker* majority also responded to Chief Justice Castille's dissent in that case, wherein he "suggest[ed]

- 21 -

unspecified revision to the existing **Kloiber** instruction[,]" which the **Walker** majority rejected, because "such revisions would entail a complete remaking, rather than a mere reworking, of the instruction." **Id.**

Based upon all of the foregoing, we initially reject Appellant's suggestion that the **Walker** decision required the trial court to modify the **Kloiber** jury instruction. Instead, **Walker** permitted Appellant to utilize expert testimony regarding identification. Moreover, upon review, the trial court did give a modified jury instruction on identification, utilizing the standard **Kloiber** charge, but also incorporating the factors from the **Walker** decision. The trial court asked the jury to consider whether identification witnesses were in a position to observe the crimes, aware of the commission of crime, distracted by a weapon, under stress, personally biased, or influenced by the way in which police used a photo-array. N.T., 6/27/2014, at 164-168. We discern no abuse of discretion or error of law.

In his seventh allegation of error, Appellant claims the Commonwealth failed to present sufficient evidence to support his first-degree murder conviction.[3] Appellant argues that, "all three identifications [of Appellant] were repudiated at trial." Appellant's Brief at 55. Thus, Appellant posits, "the jury's choice among the various in- and out-of-court statements of the

_____

[3] Appellant did not challenge his weapon convictions in his Rule 1925(b) statement or specifically in his appellate brief. Therefore, we will constrain our sufficiency review to Appellant's murder conviction.

witnesses could not be made without resorting to conjecture." *Id.* at 56-57.

In turn, Appellant avers the Commonwealth did not prove his conviction

beyond a reasonable doubt. *Id.* at 57.

We apply the following standard of review when considering a

challenge to the sufficiency of the evidence:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact[,] while passing upon the credibility of witnesses and the weight of the evidence produced is free to believe all, part or none of the evidence.

> In order for a jury to find a defendant guilty of murder of the first degree, the Commonwealth must prove, beyond a reasonable doubt, that a human being was lawfully killed, that the accused was responsible for the killing, and that the accused acted with a specific intent to kill.

***Commonwealth v. Talbert***, 129 A.3d 536, 542–543 (Pa. Super. 2015)

(internal citations and quotations omitted).

We previously determined:

Evidence of identification need not be positive and certain to sustain a conviction. Although common items of clothing and general physical characteristics are usually insufficient to support a conviction, such evidence can be used as other circumstances to establish the identity of a perpetrator. Out-of-court identifications are relevant to our review of sufficiency of the evidence claims, particularly when they are given without hesitation shortly after the crime while memories were fresh. Given additional evidentiary circumstances, any indefiniteness and uncertainty in the identification testimony goes to its weight.

*Commonwealth v. Orr*, 38 A.3d 868, 874 (Pa. Super. 2011) (*en banc*).

Moreover, our Supreme Court has concluded that

criminal convictions which rest only on prior inconsistent statements of witnesses who testify at trial do not constitute a deprivation of a defendant's right to due process of law, as long as the prior inconsistent statements, taken as a whole, establish every element of the offense charged beyond a reasonable doubt, and the finder-of-fact could reasonably have relied upon them in arriving at its decision. Prior inconsistent statements, which meet the requirements for admissibility under Pennsylvania law, must, therefore, be considered by a reviewing court in the same manner as any other type of validly admitted evidence when determining if sufficient evidence exists to sustain a criminal conviction.

*Commonwealth v. Brown*, 52 A.3d 1139, 1171 (Pa. 2012).

Here, the trial court determined there was sufficient evidence to support Appellant's murder conviction, stating:

At trial, the jury heard testimony from witnesses [] Aruviereh, [] Jackson, and [] Cropper, numerous police officers and detectives, as well as medical examiner Dr. [Edwin] Lieberman. The testimony of eyewitnesses Aruviereh and Jackson established that, on the evening of May 2, 2010, Bowser and a group of people were outside [of] 2735 Jefferson Street, near the intersection with 28th Street. Both Aruviereh and Jackson saw [Appellant]

- 24 -

approach the corner of 28th Street and Jefferson Street carrying a plastic shopping bag and moments later saw him shooting a gun towards Bowser. Aruviereh identified [Appellant] as the shooter in her February 7, 2011 statement to police. [] Jackson identified [Appellant] as the shooter in his February 22, 2012 statement to police.

The testimony of [] Cropper corroborated that of Aruviereh and Jackson with regard to the date, time, and location of the shooting as well as [Appellant's] possession of a plastic shopping bag at the time of the shooting. Cropper's testimony further established that [Appellant] fled the scene via 28th Street and that [Appellant] placed a firearm inside the plastic shopping bag after the shooting. Although Aruviereh, Jackson, and Cropper disavowed ma[n]y of the averments made in their statements to police, their signed statements were properly admitted as evidence at trial through the respective testimony of Detective Verrecchio and Detective Lucke. These statements were admissible for their truth as prior inconsistent statements that were signed and adopted by the declarants.

The testimony of [a responding police officer] and the firearms examiner Officer [Jesus] Cruz confirmed that four fired cartridge were recovered from Jefferson Street near its intersection with 28th Street and that all four casings were .390/.9 millimeter caliber and fired from the same firearm. Additionally, Dr. Lieberman's testimony established that the victim sustained a single gunshot wound to his left chest which subsequently penetrated his left lung, pulmonary artery, aorta, and right lung. Dr. Lieberman further testified that the victim's death was caused by the fatal gunshot wound.

In consideration of the evidence presented at trial, as discussed above, [the trial court] found that the evidence supported the jury's finding that [Appellant] killed Bowser with the specific intent to kill and with malice. As such, [the trial court], in view of all the evidence admitted at trial in the light most favorable to the Commonwealth, [] determined that the evidence was sufficient to enable the jury to find, beyond a reasonable doubt, that [Appellant] was guilty of [m]urder of the [f]irst[-]degree.

- 25 -

Trial Court Opinion, 8/25/2015, at 25-26 (internal citation omitted).

Upon review, we agree with the trial court's assessment. The Commonwealth presented written and signed eyewitness statements made to police identifying Appellant as the shooter. While their recorded statements may have differed from their trial testimony, the jury was free to believe all, part or some of the evidence presented. Moreover, any uncertainty in the witnesses identifications goes to the weight of the evidence presented, not the sufficiency. The eyewitnesses told police that Appellant pulled a firearm out of a plastic shopping bag, stepped toward the victim and fired, and then put the firearm back in the bag and fled. Police recovered four fired bullet casings at the scene. The medical testimony confirmed that the victim died as the result of a gunshot to the chest. Our Supreme Court previously concluded that the deliberate and repeated use of a firearm to shoot a victim in the chest or abdomen establishes his specific intent to kill. *See Commonwealth v. Padilla*, 80 A.3d 1238, 1244 (Pa. 2013). When the evidence is viewed in the light most favorable to the Commonwealth, as our standard requires, we discern sufficient evidence to support Appellant's first-degree murder conviction.

Finally, in his last issue presented, Appellant claims the verdict was against the weight of the evidence presented at trial. Appellant's Brief at 57-58. Appellant argues that between the speculative eyewitnesses and his six alibi witnesses, the "alibi testimony was so clearly of greater weight that

to ignore it or give it merely equal weight constituted a denial of justice."

***Id.*** at 58.

> We review this claim under the following standard:
>
>> An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court. Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. In order for an appellant to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court.

***Commonwealth v. Smith***, 146 A.3d 257, 264–265 (Pa. Super. 2016) (internal citations omitted).

We discern no abuse of discretion. The verdict does not shock one's conscience. The jury was permitted to make factual determinations regarding any inconsistencies in testimony. We also agree with the trial court that "the jury heard testimony from [police] and [the medical examiner] that corroborated the eye-witnesses['] collective account of the shooting[.]" ***Id.*** The physical evidence recovered at the scene revealed that a single shooter killed the victim. Moreover, the jury was free to wholly reject the testimony of Appellant's six proffered alibi witnesses. Thus, we discern no abuse of discretion by the trial court in denying Appellant relief on his weight of the evidence claim.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>1/20/2017</u>